UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLOBAL TOWER ASSETS, LLC and, NORTHEAST WIRELESS NETWORKS LLC, <br><br>        Plaintiffs,<br><br>v.<br><br>TOWN OF MOUNT VERNON, MAINE,<br><br>        Defendant. | Docket No. 1:13-cv-00351-GZS |

### ORDER ON MOTION TO DISMISS

Before the Court is Defendant Town of Mount Vernon's ("Mount Vernon") Motion to Dismiss (ECF No. 11). For reasons explained herein, the Court GRANTS IN PART and DENIES IN PART Mount Vernon's Motion to Dismiss (ECF No. 11).[1]

## I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1)-(3). The Court assumes the truth of the complaint's well-pleaded facts and draws all reasonable inferences in plaintiffs' favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Under Rule 12(b)(6), the Court "may consider only facts and documents that are part of or incorporated into the complaint." United Auto., Aero., Agric. Impl.

---

[1] Also before the Court is Plaintiffs' Motion To Strike Documents Submitted With Defendant's Motion To Dismiss (ECF No. 15). Because the Court did not rely on or reference the documents attached to Defendant's Motion To Dismiss and that are the subject of Plaintiffs' Motion To Strike, the Court determines that the Motion To Strike is MOOT.

Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 39 (1st Cir. 2011) (internal citations omitted).

A viable complaint need not proffer "heightened fact pleading of specifics," but in order to survive a motion to dismiss it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Plaintiffs must include enough facts supporting a claim for relief that "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). At this point in the litigation, "the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted." Bodman v. Maine, Dept. of Health & Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010) (denying motion to dismiss a hostile work environment claim).

## II. BACKGROUND

### A. The Parties

Mount Vernon is a municipality in Kennebec County, Maine that regulates land use within its boundaries by means of an ordinance known as the "Land Use Ordinance of the Town of Mount Vernon, Maine" ("the Ordinance"). (Compl. (ECF No. 1) ¶3.) Plaintiff Global Tower

Assets, LLC ("Global Tower") works with federally-licensed providers of personal wireless communication services, such as Plaintiff Northeast Wireless Networks, LLC ("Northeast"), by identifying and acquiring appropriate sites for the development of personal wireless communication facilities. (Id. ¶ 11.) Global Tower further works with federally licensed providers in constructing facilities for use by personal wireless communication services providers. (Id.) Global Tower has an agreement with Northeast to provide those services, including within the Town of Mount Vernon. (Id.) The Federal Communications Commission ("FCC") has issued a license to Northeast to provide wireless service in the Town of Mount Vernon pursuant to 47 U.S.C. § 151. (Id. ¶ 12.)

### B. Wireless Coverage In Mount Vernon

In the Complaint, Global Tower and Northeast state that they "have identified a specific geographical area in the Town of Mount Vernon where there is a significant gap in service coverage for personal wireless communications due to lack of a cell site in this area." (Id. ¶ 14.) Global Tower and Northeast have deemed this service problem significant and in need of a remedy. (Id. ¶ 15.) Global Tower and Northeast have conducted testing and analysis and have determined that the gap in coverage can be remedied by locating a new communications tower at 218 Blake Hill Road in Mount Vernon (the "Property"). (Id. ¶ 16.) Global Tower and Northeast have proposed a 190-foot communication tower that is designed to accommodate up to five wireless communication service providers. (Id. ¶ 18.) The Property is located in Mount Vernon's Rural District, which allows essential services as a land use, with approval by the Mount Vernon Planning Board (the "Planning Board") and the issuance of a permit by the Mount Vernon Code Enforcement Officer. (Id. ¶ 19.)

### C. Proceedings Before The Planning Board In Mount Vernon

On January 11, 2013, Global Tower and Northeast submitted an application to the Planning Board seeking approval to construct a personal wireless services facility on the Property (the "Application"). (Id. ¶ 23.) The Application requested permission to construct and operate a 190-foot communication tower. (Id.)

On January 15, 2013, the Mount Vernon Planning Board held a public meeting and substantively reviewed the Application. (Id. ¶ 24.) Specifically, the Planning Board discussed whether the proposed communication tower complied with the standards of the Ordinance, including the use classification of the proposed communication tower, and indicated that it did not believe the Application complied with the Ordinance's height requirement. (Id.)

### D. The Moratorium

On January 17, 2013, Mount Vernon's Board of Selectmen executed a Warrant for a Special Town Meeting of the Town of Mount Vernon to establish a moratorium on any new construction or use requiring approval under the terms of Ordinance until July 17, 2013. (Id. ¶ 25.) No notice was provided to Global Tower or Northeast regarding the development and execution of the Warrant regarding the moratorium. (Id.) On January 19, 2013, the Planning Board held a public meeting concerning the Application and visited the Property with Global Tower representatives. (Id. ¶ 26.) During the meeting, the Planning Board discussed the "fall zone of the communication tower" and whether the Property and leased area's specifications satisfied the Ordinance's requirements. (Id.)

On January 28, 2013, Mount Vernon held a Special Town Meeting in order to adopt the moratorium. (Id. ¶ 27.) Mount Vernon adopted the moratorium; it was effective until July 17, 2013 or until Mount Vernon amended its zoning and land use ordinances. (Id. ¶ 28.) Plaintiffs

also allege that the moratorium prohibited the acceptance and processing of any applications for personal wireless facilities governed by the Telecommunications Act of 1996 ("TCA") that were not pending proceedings under the laws of the State of Maine. (Id. ¶ 29.)

On February 15, 2013, Global Tower stated to the Planning Board that it was fully committed to pursuing its application, and that it wished to establish a mutually acceptable agreement on how the Planning Board would proceed to review the Application. (Id. ¶ 30.) On February 18, 2013, the Planning Board indicated that it would not consider the Application further until the moratorium was lifted. (Id. ¶ 31.) On March 19, 2013, the Mount Vernon Ordinance Review Committee developed proposed amendments to the Ordinance relating to personal wireless communication facilities. (Id. ¶ 33.) The amendments limited communication towers to a height no greater than ten feet above the average tree canopy height. (Id.)

On April 16, 2013, Global Tower attended a Planning Board meeting and reiterated its commitment to the Application, stated its belief that the Application was a pending proceeding and was thus unaffected by the moratorium, and then requested that the Planning Board review and act on the Application within 150 days of its submission. (Id. ¶ 32.) The Planning Board replied that it would not consider the Application until the moratorium was lifted and that, in any event, the application did not satisfy the standards set forth in the Ordinance. (Id.)

Throughout May and June of 2013, the Ordinance Review Committee continued to develop proposed amendments to the Ordinance, and Global Tower continued to provide feedback on those amendments. (Id. ¶¶ 34-36, 39.) On July 1, 2013, the Board of Selectmen called a Special Town Meeting for July 13, 2013 to have voters consider proposed amendments to the Ordinance. (Id. ¶ 40). No notice regarding the meeting was provided to Plaintiffs. (Id.)

At the July 13, 2013 Special Town Meeting, Mount Vernon purportedly adopted various amendments to the Ordinance relating to personal wireless communication facilities. (Id. ¶ 42).

### E. The Planning Board Considers The Application

On July 23, 2013, the Chair of the Planning Board contacted Global Tower, stating that the Ordinance had been amended and that the Planning Board was now willing to assist Global Tower in moving its construction plans forward. (Id. ¶ 43.) On August 6, 2013, Global Tower requested that the Planning Board review and decide the Application at its next meeting on August 20, 2013. (Id. ¶ 44.) In response, the Planning Board placed the Application on the agenda for consideration at its August 20, 2013 meeting. (Id. ¶ 45.)

At the August 20 meeting, the Planning Board took up the Application but refused to finalize its review. (Id. ¶ 46.) Instead, the Planning Board tabled the Application for further consideration. (Id.) Global Tower objected to any further delay and did not consent to any further extension of the Planning Board's review of the Application. (Id.) At that time, the Planning Board verbally stated that the Application did not meet the Ordinance. (Id. ¶ 47.)

### F. Litigation

On September 13, 2013, Global Tower and Northeast filed their Complaint (ECF No. 1) against the Town of Mount Vernon. Plaintiffs' Complaint asserts two counts. Within the first count, Plaintiffs assert three claims under the TCA: (1) the actions and omissions of Mount Vernon constitute an unreasonable delay in violation of 47 U.S.C. § 332(c)(7)(B)(ii) (the "Unreasonable Delay Claim"); (2) the actions and omissions of Mount Vernon constitute a failure to act and issue a written decision in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (the "Failure To Act/Written Decision Claim"); and (3) the actions and omissions of Mount Vernon constitute or have the effect of prohibiting the provision of personal wireless communication

services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) (the "Effective Prohibition Claim"). (Compl. ¶¶ 51-53.) The second count requests a declaratory judgment that Plaintiffs' Application is a pending proceeding and is unaffected by the moratorium. (Id. ¶¶ 55-59; Request for Relief D.) On October 22, 2013, Mount Vernon moved to dismiss the Complaint. (Motion to Dismiss (ECF No. 11).)

**III. DISCUSSION**

Under the TCA, the FCC licenses carriers to provide wireless telephone service on a competitive basis. 47 U.S.C. § 332(c). The statute preserves state and local authority over the placement and construction of facilities, id. § 332(c)(7)(A), subject to five limitations, id. § 332(c)(7)(B), three of which are pertinent here.

> The first relevant limitation, set forth in subsection (B)(i), provides that in regulating the placement and construction of facilities, a state or local government or instrumentality 'shall not prohibit or have the effect of prohibiting the provision of personal wireless services.' 47 U.S.C. § 332(c)(7)(B)(i)(II). . . . The second limitation requires the local government to 'act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed taking into account the nature and scope of such request.' 47 U.S.C. § 332(c)(7)(B)(ii). Similarly, a reviewing court must hear and decide the action 'on an expedited basis.' Id. § 332(c)(7)(B)(v). The third states that the denial of a request must be in writing and supported by substantial evidence contained in a written record. Id. § 332(c)(7)(B)(iii).

National Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 19-20 (1st Cir. 2002) ("National Tower").

In its Motion to Dismiss, Mount Vernon asserts that all three of Count I's TCA claims fall outside the limitations period set forth in 47 U.S.C. § 332(c)(7)(B). Mount Vernon argues that even if the claims were timely, Plaintiffs' Failure to Act/Written Decision Claim and their Effective Prohibition Claim fail to state claims upon which relief can be granted because Mount Vernon has not taken final action on Plaintiffs' Application. Even if it had taken final action,

7

Mount Vernon asserts Plaintiffs' Effective Prohibition claim fails because they have not sufficiently pleaded that there is a significant gap in coverage or that future efforts would be fruitless.

### A. Timeliness of Plaintiffs' Count I Claims

Congress enacted the TCA "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." TELECOMMUNICATIONS ACT OF 1996, PL 104–104, February 8, 1996, 110 Stat 56. (internal citations omitted.) Accordingly, claims under the TCA are governed by the limitations period set forth in 47 U.S.C. § 332(c)(7)(b), which provides:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

Id. Because all of the claims in Count I are premised on the inaction of Mount Vernon, whether Plaintiffs' claims are timely turns on whether the Complaint was filed within thirty days of Mount Vernon's "failure to act."

The TCA does not define what constitutes a failure to act. However, the FCC addressed the issue in <u>In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(b) to Ensure Timely Siting Review & to Preempt Under Section 253 State & Local Ordinances That Classify All Wireless Siting Proposals As Requiring A Variance</u>, 24 F.C.C. Rcd. 13994, 14013 (2009) (the "Shot Clock Ruling"). Under the Shot Clock Ruling, a municipality's failure to act on an application for the construction of a new wireless service facility within 150 days of submission of the application is presumptively unreasonable and

constitutes a "failure to act" that triggers the right to seek judicial relief. Id. ¶¶ 32, 37. However, the Shot Clock Ruling also explicitly states that:

> [A] rigid application of this cutoff to cases where the parties are working cooperatively toward a consensual resolution would be contrary to both the public interest and Congressional intent. Accordingly, we clarify that a "reasonable period of time" may be extended beyond 90 or 150 days by mutual consent of the personal wireless service provider and the State or local government, and that in such instances, the commencement of the 30-day period for filing suit will be tolled.

Id. ¶ 49. Accordingly, while generally a suit must be brought within 180 days of the submission of a completed application, where the parties are working together toward a resolution, the 180 day limitation may be tolled. Id.; see also New Cingular Wireless PCS, LLC v. Town of Stoddard, N.H., 853 F. Supp. 2d 198, 201 (D.N.H. 2012) ("New Cingular") (providing that the plaintiff agreed to extend the presumptive deadline); Bell Atl. Mobile of Rochester L.P. v. Town of Irondequoit, N.Y., 848 F. Supp. 2d 391, 400 (W.D.N.Y. 2012) (indicating that the parties had "voluntarily agreed" to an extension of the presumptive deadline).

Here, the Complaint alleges that the Application was submitted to the Planning Board on January 11, 2013. Under the presumption established in the Shot Clock Ruling, any complaint had to be filed by July 11, 2013 to be timely. See Shot Clock Ruling ¶ 37. However, drawing all reasonable inferences in Plaintiffs' favor, the Complaint also alleges a series of actions on the part of both Plaintiffs and Mount Vernon that extended the reasonable period of time by mutual consent. Throughout May and June of 2013, the Ordinance Review Committee continued to develop proposed amendments to the Ordinance, and Global Tower continued to provide feedback on those amendments. (Compl. ¶¶ 34-36, 39.) In early July, Global Tower again reached out to the Planning Board, asking how it could be of assistance to the Board. (Id. ¶ 41.) In June and July, there were two Town Meetings to discuss the proposed amendments. (Id. ¶¶ 37, 38, 42.) On July 23, 2013, the Planning Board contacted Global Tower, stating that it was

9

now willing to assist Global Tower in moving forward with the plan for construction of a wireless tower. (Id. ¶ 43.) Global Tower responded by requesting that the Planning Board resolve the Application at the upcoming August 20, 2013 meeting, and the Planning Board placed the Application on the agenda for that meeting. (Id. ¶ 44.) However, at the August 20, 2013 meeting, the Planning Board took up the Application but then tabled it for further consideration for a date yet to be determined. (Id. ¶ 46.)

Construing these facts in the light most favorable to Plaintiffs, the Complaint shows a series of actions before and after the June 10, 2013 presumptive deadline by both the Planning Board and Plaintiffs that extended that presumptive deadline. Throughout this period, the Planning Board considered a series of proposed amendments, to which the Plaintiffs provided feedback. Most notably, the Planning Board reached out to Plaintiffs on July 23, 2013 and indicated a willingness to continue the process of considering the Application, and Plaintiffs readily moved forward with the Application. These actions show a level of mutual consent sufficient to extend the presumptive deadline on a motion to dismiss. Accordingly, at this stage of the litigation, the Court cannot say that Plaintiffs' claims were untimely. Defendant's Motion To Dismiss is therefore DENIED on this basis.

### B. Sufficiency of Plaintiffs' Failure To Act/ Written Decision and Effective Prohibition Claims

Mount Vernon asserts that Plaintiffs' Failure to Act/Written Decision and Effective Prohibition Claims should be dismissed because the Complaint fails to state cognizable claims upon which relief may be granted. The Failure to Act/Written Decision claim is premised on 47 U.S.C. § 332(c)(7)(B)(iii), which requires that "[a]ny decision by a State or local government or instrumentality thereof to deny" an application to construct a wireless communications facility "shall be in writing and supported by substantial evidence contained in a written record." The

Effective Prohibition Claim is premised on 47 U.S.C. § 332(c)(7)(B)(i)(II), which provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." The Court will address each claim in turn.

### i. The Failure to Act/Written Decision Claim

In their Complaint, Plaintiffs allege that Mount Vernon's actions and omissions "constitute a failure to act and issue a written decision supported by substantial evidence in the written record in violation of 47 U.S.C. § 332(c)(7)(B)(iii)." (Compl. ¶ 52.) Mount Vernon argues that Plaintiffs' Failure to Act/Written Decision claim must be based upon a final action in the form of a written decision. (Mot. to Dismiss 11 at 12-13). Mount Vernon argues that if this were not so, "[i]nterpreting both § 332(c)(7)(B)(ii), which expressly authorizes claims based on a failure to act, and § 332(c)(7)(B)(iii) to authorize a claim based on an alleged failure to act would impermissibly read redundancy into the statute." (Id. at 13.) Mount Vernon primarily relies upon the District of New Hampshire's decision in New Cingular Wireless PCS, LLC v. Town of Stoddard, 853 F. Supp. 2d 198 (D.N.H. 2012) and this Court's decision in Industrial Commun. & Elec., Inc. v. Town of Falmouth, 98-397-P-H, 1999 WL 33117159 (D. Me. June 10, 1999) (Recommended Decision) ("Industrial Commun."), aff'd Order Affirming Recommended Decision of Magistrate (ECF No. 24) (D. Me. July 12, 1999), in support of its argument.

The New Cingular court held that the plaintiff's 47 U.S.C. §§ 332(c)(7)(B)(iii) claim was premature because its application had not been denied by the local zoning board and "[t]he plain language of the 'substantial evidence' provision, § 332(c)(7)(B)(iii), requires that the local government make a 'decision . . . to deny' the application." 853 F. Supp. 2d at 207. Likewise,

the court found that "although § 332(c)(7)(B)(i)(II)'s 'effective prohibition' provision is not nearly as clear on its face, the court of appeals has read it to require a showing that, inter alia, the plaintiff's application was denied." Id. The court then distinguished the facts of its case, where the board failed to resolve plaintiff's application but indicated that further action would be taken, from other cases where it was determined that a local government authority's failure to act constituted a "functional" or "de facto" denial.[2] See id. at 207-08. The court cautioned that "[t]his is not to say that a failure to act on an application cannot ever, under any set of circumstances, amount to an effective denial of the application." Id.; see also Wireless Income Props. v. McDonald, 403 F.3d 392, 397 (6th Cir. 2005) ("Wireless Income") (finding that the defendant's informal denial of the plaintiff's applications during a nine month period following the expiration of the moratorium was not simply a failure to act but rather a functional denial.)

Mount Vernon also relies on Industrial Commun. in arguing that Plaintiffs cannot bring a section 332(c)(7)(B)(iii) claim. In that case, the defendants argued that the plaintiff's claim was untimely under section 332(c)(7)(B)(v) because the "final action" – when the local zoning board voted to deny the plaintiff's application – occurred more than 30 days prior to the plaintiff filing suit. Indus. Communs., 1999 WL 33117159 at *2. Ultimately, the court agreed with the plaintiff that it was only when the board issued a written notice of its decision (which was within the limitations period) that it had committed a "final action." Indeed, the court indicated that allowing a TCA defendant to wait until the limitations period expired to provide reasons for its

---

[2] The New Cingular court found that factual variations in other "de facto" denial cases made its case distinguishable. For example, in Tennessee ex rel. Wireless Income Properties, LLC v. City of Chattanooga, 403 F.3d 392 (6th Cir. 2002), the TCA defendant informed the plaintiff that its applications, absent amendment, would not be granted. See id. at 207. Likewise, in Sprint Spectrum L.P. v. Town of Durham, No. 97-305-JD, 1998 WL 1537756 (D.N.H. Aug. 27, 1998), the TCA defendant declared that the original application to construct a wireless communications facility had become moot and required the plaintiff to submit a new application. Id. at **2-3.

12

action would be contrary to Congressional intent and would effectively preclude judicial review of TCA defendants' decisions. Id. at *3.

Assuming the truth of Plaintiffs' well-pleaded facts and drawing all reasonable inferences in their favor, the Court finds that Plaintiffs adequately pleaded that Mount Vernon has functionally denied its Application. Specifically, Plaintiffs allege that at its August 20, 2013 meeting the Mount Vernon Planning Board reviewed its Application, refused to finalize its review, but instead "tabled the Application for further consideration to a date yet to be determined." (Compl. ¶ 46.) At that same meeting, "the Mount Vernon Planning Board verbally stated the Application does not meet the Mount Vernon Land Use Ordinance." (Id. ¶ 47.) Much like the circumstances contemplated in New Cingular, Plaintiffs' Complaint plausibly alleges that in reviewing Plaintiffs' Application and indicating it failed to meet its land use ordinance, Mount Vernon effectively denied the Application absent amendment and resubmission. Similar to Wireless Income, it was only after it amended its land use ordinance and after its moratorium had expired that Mount Vernon verbally informed Plaintiffs that their application did not adhere to its land use ordinance. (Compl. ¶¶ 42, 43, 46, 47.) Accordingly, on the record now before the Court, Mount Vernon's Motion to Dismiss Plaintiffs' "Failure to Act/Written Decision" claim is DENIED.

      ii.    **The Effective Prohibition Claim**

As indicated above, an effective prohibition claim is not ripe until a local government body has denied a plaintiff's application. See New Cingular, 853 F. Supp. 2d at 207. However, the same "functional denial" analysis outlined in New Cingular and Wireless Income applies to the instant claim. For the same reasons outlined regarding Plaintiffs' Failure to Act/Written

13

Decision Claim, the Court finds that Plaintiffs have plausibly articulated facts suggesting a functional denial of the Application.

Turning to the substance of the Effective Prohibition Claim, "a town may not through its decisions have 'the effect of prohibiting' wireless service[,]" and this prohibition encompasses not only a blanket ban on wireless service but may also encompass the denial of individual applications. National Tower, 297 F.3d at 20. The First Circuit has explained that while "an individual denial is not automatically a forbidden prohibition violating the 'effects' provision . . . neither can [the court] rule out the possibility that – based on language or circumstances – some individual decisions could be shown to reflect, or represent, an effective prohibition on personal wireless service." Id. (citing Town of Amherst v. Omnipoint Communs. Enters., Inc., 173 F.3d 9, 14 (1st Cir. 1999)).

Where a plaintiff alleges that the denial of a single application amounts to an effective prohibition, the plaintiff must show that: (1) there is a significant gap in coverage, and (2) "that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." Id. at 19-20; see also Omnipoint Holdings, Inc. v. City of Cranston, 586 F.3d 38, 48 (1st Cir. 2009) ("Omnipoint Holdings"). The First Circuit has held that "[w]hether or not an effective prohibition has occurred depends on each case's unique facts and circumstances." Green Mountain Realty Corp. v. Leonard, No. 13-2163, slip op. at 21 (1st Cir. Apr. 23, 2014). By way of example, in National Tower, where it was undisputed that there was a significant coverage gap, the First Circuit indicated that setting out criteria under a zoning law that no one could ever meet was tantamount to an effective prohibition. 297 F.3d at 23.

Accordingly, Plaintiffs must first allege that there is a significant gap in coverage. National Tower, 297 F.3d at 20; Omnipoint Holdings, 586 F.3d at 48. In assessing whether a

14

coverage gap is significant, the First Circuit has instructed that courts "should consider, inter alia, the physical size of the gap, the area in which there is a gap, the number of users the gap affects, and whether all of the carrier's users in that area are similarly affected by the gaps." Omnipoint Holdings, 586 F.3d at 49. Here, Plaintiffs allege that they have "identified a specific geographical area in the Town of Mount Vernon" where a significant gap exists "due to lack of a cell site in [the] area." (See Compl. ¶¶ 14, 15.) However, Plaintiffs make no allegations beyond that bald legal conclusion. The Complaint contains no further information concerning the factors outlined by the First Circuit. See Omnipoint Holdings, 586 F.3d at 49. Plaintiffs assert that the service gap is confined to a "specific geographical area," but go no further in describing the size or location of the area. Although Plaintiffs allege that "[t]he presence of this significant service coverage gap poses a public safety risk for individuals and public safety organizations that rely on wireless communications in reporting emergency situations," (Compl. ¶ 15), they fail to state whether and to what extent their coverage is inadequate within the service gap. To that end, the Court finds that Plaintiffs' description of the service gap as "significant" is conclusory language unsupported by any plausible factual assertions. On this ground alone, Plaintiffs have failed to state a claim for effective prohibition.

Even assuming that Plaintiffs' allegations regarding the coverage gap were sufficient, Plaintiffs fail to allege that further efforts would be fruitless. See National Tower, 297 F.3d at 20; Omnipoint Holdings, 586 F.3d at 48. In response to Mount Vernon's argument that Plaintiffs have failed to mount an effective prohibition claim, Plaintiffs argue that further efforts would be a waste of time because Mount Vernon "is hostile to personal wireless service facilities and, specifically, the Application." (Pls.' Obj. To Defs.' Mot. To Dismiss And Incorp. Mem. Of Law (ECF No. 16) at 16.) In support, Plaintiffs argue that the Town's alleged enactment of the

15

moratorium shows Mount Vernon's hostility. (Id.) Plaintiffs have offered no support for the argument that past hostility alone equates to future reasonable efforts being fruitless and a waste of time. Plaintiffs finally argue that the interpretation of the Ordinance adopted by the town amounts to an "overly restrictive height standard." (Id. at 17.) Restrictive standards are not the same as criteria under zoning laws that are impossible to meet. See National Tower, 297 F.3d at 23. Accordingly, Plaintiffs have also failed to allege that "further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." Id. at 20.

The Court simply cannot infer from Plaintiffs' vague and conclusory statements that they have adequately pleaded an effective prohibition claim. Because Plaintiffs fail to satisfy the first and second prongs of the effective prohibition claim analysis, this claim cannot go forward. Mount Vernon's Motion to Dismiss is GRANTED as to the Effective Prohibition Claim only (Compl. ¶ 53).

### C. Pendant Jurisdiction Over Plaintiffs' Count II Claim

To the extent Mount Vernon seeks dismissal for lack of jurisdiction, its motion is DENIED. The Court has federal question jurisdiction over Plaintiffs' TCA claims brought pursuant to sections 332(c)(7)(B)(ii) and 332(c)(7)(B)(iii). The Court finds Plaintiffs' Count II claims arise from the same "nucleus of operative facts" as their Count I claims. Accordingly, the Court elects to exercise supplemental jurisdiction over the remaining state law claim brought pursuant to 1 M.R.S.A. § 102.

## IV. CONCLUSION

For the aforementioned reasons, the Court GRANTS IN PART and DENIES IN PART Mount Vernon's Motion to Dismiss (ECF No. 11), and deems Global Tower and Northeast's Motion to Strike (ECF No. 15) MOOT. In accordance with this ruling, Count I is dismissed to

the extent it states an effective prohibition claim (the relief requested in paragraph 53 of the Complaint), but Count I shall proceed to the extent it alternatively pleads claims for unreasonable delay and failure to act in violation of TCA.

SO ORDERED.

                                         /s/ George Z. Singal
                                         United States District Judge

Dated this 27th day of May, 2014